# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 99-1390

Marian Sears, Appellant,

v.

Anthony J. Principi,
Secretary Of Appellants Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Decided   August 20, 2002   )

*Kenneth M. Carpenter*, of Topeka, Kansas, was on the pleadings for the appellant.

*Leigh A. Bradley*, General Counsel; *Ron Garvin*, Assistant General Counsel; *Joan E. Moriarty*, Deputy Assistant General Counsel; and *Patricia Trujillo*, all of Washington, D.C., were on the pleading for the appellee.

Before HOLDAWAY, IVERS, and STEINBERG, *Judges*.

IVERS, *Judge*, filed the opinion of the Court.  STEINBERG, *Judge*, filed a concurring opinion.

IVERS, *Judge*:  Veteran Virgil G. Lawton, through his legal custodian, the appellant, Marian Sears, appeals a May 25, 1999, decision of the Board of Veterans' Appeals (BVA or Board), which denied an effective date earlier than October 26, 1995, for service connection for post-traumatic stress disorder (PTSD).  The May 1999 BVA decision remanded the matter of service connection for a skin disorder, and that part of the decision has not been raised to the Court on this appeal. Pursuant to 38 U.S.C. § 7252(a), the Court has jurisdiction to consider the current appeal, which has been timely filed. For the reasons set forth below, the Court will affirm the Board's May 1999 decision.

## I. FACTS

The veteran served in the U.S. Army from July 1968 to July 1971, including service in Vietnam. Record (R.) at 15. After the veteran filed his first claim for service connection for PTSD in April 1988 (R. at 90-93), he was diagnosed with the disorder in May 1988 (R. at 103). A September 21, 1988,VA regional office (RO) decision denied the veteran's claim; a September 7, 1990, BVA decision sustained that denial. R. at 138-39, 163-67. In February 1994, the veteran had a routine VA mental disorders examination, the report of which stated that he was "not competent" for VA pension purposes. R. at 174-79. At that time, the veteran was again diagnosed with PTSD. R. at 178. In April 1995, the veteran received care and treatment for PTSD at a VA mental health clinic. R. at 181-85.

On October 26, 1995, the veteran sought to reopen his previously and finally disallowed claim for service connection for PTSD. R. at 187-90. A VA regional office (RO) decision dated August 11, 1997, granted service connection for PTSD, evaluated as 100% disabling, effective on the date of the veteran's October 1995 claim . R. at 315-17. The veteran disagreed with the effective date of the award; he asked "that compensation be granted retroactively from the incurrence of the PTSD [c]ondition." R. at 322.

In the BVA decision presently on appeal, the Board found that because a September 1988 RO decision had denied service connection for PTSD (R. at 138-39), and a September 1990 BVA decision had affirmed that denial (R. at 163-67), that decision had become final, and, therefore, an effective date prior to September 1990 was not warranted. R. at 3. The Board concluded that an effective date prior to October 26, 1995, the date that the veteran filed his claim to reopen, was not warranted for the veteran's reopened claim for service connection for PTSD. R. at 4. With respect to the February 1994 medical examination report that diagnosed PTSD, and the April 1995 evidence of VA treatment for PTSD, the Board stated:

> [N]either of the foregoing reports served to comprise an informal claim for service connection for [PTSD] in accordance with the provisions of 38 C.F.R. § 3.157(b) (1998) inasmuch as such provision only pertains to a circumstance not incident to this aspect of the appeal, i.e., a situation in which a prior disallowance of compensation involved a service-connected condition which was not compensable in degree.

R. at 9.

## II. ANALYSIS

A Board determination of the proper effective date is a finding of fact. *See Lalonde v. West*, 12 Vet.App. 377, 380 (1999); *Hanson v. Brown*, 9 Vet.App. 29, 32 (1996). The Court reviews questions of fact using the "clearly erroneous" standard of review. *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990); 38 U.S.C. § 7261(a)(4). In determining whether a finding is clearly erroneous, "this Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible basis' in the record for the factual determinations of the BVA . . . [ the Court] cannot overturn them." *Gilbert*, 1 Vet.App. 53.

Generally,

> the effective date of an award based on an original claim, a claim reopened after final adjudication, or a claim for increase, of compensation, dependency and indemnity compensation, or pension, shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor.

38 U.S.C. § 5110(a). The VA regulation concerning the effective date for a reopened claim, 38 C.F.R. § 3.400(q), provides that the effective date for an award of benefits based upon new and material evidence, other than evidence from service department records, that was received after final disallowance of a claim is the "[d]ate of receipt of [the] new claim or [the] date entitlement arose, whichever is later." 38 C.F.R. § 3.400(q)(1)(ii) (2001).

### A.

The appellant does not assert that the Board's determination of the proper effective date was "clearly erroneous." *See Lalonde*, *supra*. Instead, in her brief for this appeal, the appellant urges the Court to interpret 38 U.S.C. § 5110(a) to find that the effective date of a reopened claim should be the date of the original claim, not the date of the application to reopen that claim after a prior, final adjudication. To that end, she argues that 38 C.F.R. § 3.400(q)(1)(ii) is inconsistent with the plain meaning of section 5110(a), and with 38 U.S.C. § 5108 (Reopening Disallowed Claims), because the regulatory provision uses the terminology "new claim." Appellant's Brief (Br.) at 5-14; Reply Br. at 2.

The appellant's argument lacks merit, and seeks an interpretation that, although favorable to the veteran in the present matter, would convolute the plain meaning of the statutory and regulatory scheme for determining effective dates. The generally applicable parts of the effective-date statute and regulation delineate three types of "claims": (1) An original claim, (2) a claim reopened after final disallowance, and (3) a claim for an increase in benefits. *See* 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400. The use of the term "new claim" in 38 C.F.R. § 3.400(q)(1)(ii) refers to the second of the three types of claims to which the regulation and statute are generally applicable, i.e., a claim reopened after final disallowance. *See* 38 C.F.R. § 3.400(q)(1)(ii) (part of the regulation governing effective dates that applies when new and material evidence is received after final disallowance of a claim). Furthermore, there is no support in the law for the appellant's position that the Court should read section 5110(a)'s mandate that the effective date for a reopened claim "shall not be earlier than the date of receipt of application therefor" as referring to the date of receipt of the *original* claim rather than the claim to reopen. *See Wright v. Gober*, 10 Vet.App. 343, 345-47 (1997). In *Wright*, the Court held that the words "application therefor" in section 5110(b) "means the application that resulted in the award of disability compensation currently under review for an effective date", *id.* at 347; the same rationale applies as to section 5110(a).

The Court also rejects the appellant's assertion that, "by its very nature, a claim for reopening overcomes the finality of the previously denied claim because it requires a thorough review of the former disposition of the original claim." Appellant's Br. at 6. In urging that the regulatory provision found at 38 C.F.R. § 3.400(q)(1)(ii) is invalid, the appellant would have the Court overturn its body of precedential law that upholds the interpretation of the relevant language of 38 U.S.C. § 5110(a) to mean that an award granted on a reopened claim will be effective no earlier than the date that the claim for reopening was filed. *See* Appellant's Br. at 9 (citing *Flash v. Brown*, 8 Vet.App. 332, 340 (1995); *Lapier v. Brown*, 5 Vet.App. 215, 216-17 (1993); *Spencer v. Brown*, 4 Vet.App. 283, 293 (1993), *aff'd*, 17 F.3d 368 (Fed. Cir. 1994); *Rowell v. Principi*, 4 Vet.App. 9, 14 (1993).

In *Spencer*, *supra*, the Court provided an in-depth analysis of the validity of the requirement that the Secretary adjudicate a previously and finally denied claim upon receipt of new and material

evidence relative to the claim. *Spencer*, 4 Vet.App. at 290-97. In the context of that analysis, the Court stated the following:

> [I]t is made clear [by 38 U.S.C. § 5110(a)] that such "reopening" will not have retroactive effect relating back to the original claim but will have the attributes of a ***new*** claim with regard to effective date. Although, as noted in subpart iii., above, the use of "reopening" in prior statutory provisions may have connoted only adjudication of a finally denied claim on the basis of the original application, with any award being retroactive to the date of that application, the use of that term in [§ 5110(a)] since 1962 and in § 5108 pursuant to the VJRA makes clear that "reopening" now refers as well to claims based on new and material evidence from sources other than service department reports; in essence, such claims are treated as new claims.

*Id*. at 297. The Court thus holds that the effective-date statute, 38 U.S.C. § 5110(a), is clear on its face with respect to granting an effective date for an award of VA periodic monetary benefits no earlier than the date that the claim for reopening was filed.

The appellant's argument that 38 U.S.C. § 5108 precludes considering a reopened claim to be a "new claim" does not support her contention regarding effective dates for awards based upon reopened claims. The reopening of a claim is an exception to the rule of finality stated in 38 U.S.C. § 7104(b) (Jurisdiction of the Board). The rule explicitly states: "Except as provided in section 5108 of this title, when a claim is disallowed by the Board, the claim may not thereafter be reopened and allowed and a claim based upon the same factual basis may not be considered." 38 U.S.C. § 7104(b); *see also* 38 U.S.C. § 7105(c) (finality of RO decisions). Section 5108 requires that a claim that has been disallowed be reopened "[i]f new and material evidence is presented or secured." 38 U.S.C. § 5108; *see* 38 C.F.R. § 3.156(a) (2001). If the claim is reopened, then a new factual basis emerges (from the new and material evidence along with the existing evidence), upon which the reopened claim is to be considered. *See Thompson v. Derwinski*, 1 Vet.App. 251, 253-54 (1991) (discussing of rule of finality and new factual basis established by new and material evidence).

This new factual basis renders the reopened claim a "new claim" for purposes of the effective-date language of 38 C.F.R. § 3.400(q)(1)(ii). Reading the regulatory provision in this manner is consistent with the statutory framework established by 38 U.S.C. § 7104(b), regarding jurisdiction and the rule of finality, and 38 U.S.C. § 5110(a), regarding the assignment of effective

5

dates. For purposes of setting effective dates, Congress expressly specified that a claim reopened after final disallowance is distinct from the original claim that came before it. *See* 38 U.S.C. § 5110(a). Further, Congress expressly prohibited, on jurisdictional grounds, consideration of a claim that has been finally disallowed by the Board on the same factual basis. *See* 38 U.S.C. § 7104(b); *Barnett v. Brown*, 83 F.3d 1380, 1383 (holding that section 7104(b) "means that the Board does not have jurisdiction to consider a claim which it previously adjudicated unless new and material evidence is presented, and before the Board may reopen such a claim, it must so find"); *see also* 38 U.S.C. § 7105(c).

The statutory framework simply does not allow for the Board to reach back to the date of the original claim as a possible effective date for an award of service-connected benefits that is predicated upon a reopened claim. The rule of finality regarding an original claim implies that the date of that claim is not to be a factor in determining an effective date if the claim is later reopened. The presence of a reopened claim as one of three types of claims referred to in the effective-date statute reinforces this interpretation. In light of this harmonious analysis of the relevant statutes and the regulation, the Court holds that the term "new claim," as it appears at 38 C.F.R. § 3.400(q)(1)(ii), means a claim to reopen a previously and finally denied claim.

B.

The appellant argues, alternatively, that for purposes of allowing an effective date earlier than the date of a claim to reopen, the regulatory provision providing effective dates for claims for increased disability ratings should apply to claims to reopen. Appellant's Br. at 14-18. In making this argument, the appellant has analogized the duo of claims for increased ratings and claims to reopen to certain *informal* claims for increased ratings and claims to reopen.

The appellant points out that 38 C.F.R. § 3.157 treats informal claims for increased ratings and informal claims to reopen, based upon reports of medical examination or hospitalization, the same for purposes of determining effective dates. Appellant's Br. at 14-18. She then asserts that the effective-date provisions of 38 C.F.R. § 3.400(o)(2) (effective dates for increases) should, therefore, apply to claims to reopen. *Id*. The appellant contends that because 38 C.F.R. § 3.400(o)(2) provides that the effective date for an award of benefits based upon a claim for an increased rating can be the earliest date that it is factually ascertainable that an increase in disability has occurred, an effective

6

date for an award arising from a reopened claim can be the earliest date that it is factually ascertainable that the condition for which the award is made existed. *Id.*

The Court will not accept the appellant's apparent invitation to override the limits of the effective-date provisions presently in the regulations. Regulatory section 3.157 applies to a defined group of claims, i.e., as to disability compensation, those claims for which a report of a medical examination or hospitalization is accepted as an informal claim for an increase of a service-connected rating where service connection has already been established. *See* 38 C.F.R. § 3.157 (2001); *Servello v. Derwinski*, 3 Vet.App. 196, 199 (1992). The specific effective-date provisions of 38 C.F.R. § 3.157 do not supercede or conflict with the effective-date provisions of 38 C.F.R. § 3.400 that are applicable to claims for increased disability compensation and claims reopened with new and material evidence. *See* 38 C.F.R. §§ 3.400(o)(2) and (q).

Regulatory section 3.400 begins with the following: "General: Except as otherwise provided, the effective date . . . will be . . . ." 38 C.F.R. § 3.400. Section 3.157 and the subsections of section 3.400 *provide otherwise* for effective dates related to the types of claims they respectively define. *See* 38 C.F.R. § 3.157 (report of examination or hospitalization accepted as informal claim, and date of report accepted as date of claim, which date is a determining factor in deciding the effective date of an award of benefits); 38 C.F.R. § 3.400(o)(2) (effective dates for successful claims for increases in disability compensation); 38 C.F.R. § 3.400(q) (effective dates for successful claims reopened with new and material evidence).

The Court holds that it was not erroneous for the Board to conclude that no informal claims had been filed pursuant to 38 C.F.R. § 3.157. *See* R. at 9. The Court will not override the relevant effective-date regulatory provision in this case, 38 C.F.R. § 3.400(q), in favor of extending the unrelated provision of 38 C.F.R. § 3.400(o)(2).

C.

The final alternative argument advanced by the appellant is that the language of 38 C.F.R. § 3.157 prohibits the filing of an informal claim for reopening, contrary to the pro-veteran nature of the veterans benefits system. Appellant's Br. at 19-25. In making this argument, the appellant misconstrues that regulation.

As discussed above, 38 C.F.R. § 3.157 applies to a quite-specific group of claims for disability compensation, i.e., those that are considered informal claims on the basis of a submission of a report from a medical examination or hospitalization. The regulation allows for the reports to serve as informal claims for increased disability compensation for service-connected conditions, and as claims to reopen finalized claims regarding service-connected conditions, presumably in an effort to gain compensation. *See Servello*, *supra*. The regulation does not, as alleged by the appellant, "effectively preclude[ ] informal claims for reopening." Appellant's Br. at 24.

## III. CONCLUSION

Accordingly, upon consideration of the record on appeal and the parties' pleadings, and for the reasons stated herein, the Court holds that the Board's denial of the appellant's request for an earlier effective date was not "clearly erroneous." *See Lalonde*, *Hanson*, and *Gilbert*, all *supra*. The May 25, 1999, BVA decision is AFFIRMED.

STEINBERG, *Judge*, concurring: I concur in the Court's decision and join in the opinion, except with respect to the statement in part II.C. that 38 C.F.R. § 3.157(b) "allows for the reports" from a medical examination or hospitalization "to serve as . . . **claims to reopen** finalized claims regarding service-connected conditions, presumably in an effort to gain compensation". I write separately to address 38 C.F.R. § 3.157(b) and the conflicted language that renders that regulation virtually impossible to apply.

Regulatory § 3.157(b) discusses the circumstances under which, inter alia, a report of examination or hospitalization may serve as an informal claim for an increased rating or an informal claim to reopen. The regulation states, in pertinent part:

> (b) *Claim.* Once a formal claim for pension or compensation has been allowed or a formal claim for compensation disallowed for the reason that the service-connected disability is not compensable in degree, receipt of one of the following will be accepted as an informal claim for increased benefits *or an informal claim to reopen*. In addition, receipt of one of the following will be accepted as an *informal claim* in the case of a retired member of a uniformed service whose formal claim for pension or compensation has been disallowed because of receipt of retirement pay. The evidence listed will also be

8

accepted as ***an informal claim*** for pension previously denied for the reason the disability was not permanently and totally disabling.

     (1) *Report of examination or hospitalization by [VA] or uniformed services. . . .*

     (2) *Evidence from a private physician or layman. . . .*

     (3) *State and other institutions. . . .*

38 C.F.R. § 3.157(b) (2001) (emphasis added). I find it virtually impossible to divine the meaning of the emphasized words in the context of the seemingly unconnected three sentences in subsection (b).

That part of the Court's opinion quoted above suggests that there can be a claim to reopen in the case of a claim to gain compensation for a service-connected condition. I find that language quite difficult to follow, but, in fairness, those words appear simply to mirror the "confusing tapestry" of the language of the regulation. *Hatlestad v. Derwinski*, 1 Vet.App. 164, 167 (1991); *see also Zang v. Brown*, 8 Vet.App. 246, 255 (1995) (Steinberg, J., separate views).

The one thing that does appear to be clear about § 3.157(b) is that, as to a disability that has been found to be service connected – whether or not rated as compensable – or as to non-service-connected pension that has been awarded, the submission of one of the types of evidence listed in paragraphs (1), (2), or (3) of subsection (b) will constitute an informal claim for increased benefits. 38 C.F.R. § 3.157(b). Otherwise, however, the regulation contains internal contradictions that render it largely incomprehensible; in my view, this regulation should be near the top of the list for revision, as part of a regulatory review process that, in one form or another, has been underway for some time at the Department of Veterans Affairs (VA),[1] in order to resolve the following issues:

1. What is the meaning of the term "an informal claim to reopen" as used in the first sentence of § 3.157(b) to describe how certain specified evidence might be accepted? This sentence describes three types of claims in which such evidence might be accepted for purposes of "reopening", but it appears that none of those type of claims could actually be the subject of a claim to reopen. The

---

[1] *See Zang v. Brown*, 8 Vet.App. 246, 255 (1995) (Steinberg, J., separate views) (listing VA regulations needing "review and reevaluation by the Secretary").

9

regulation refers first to "a formal claim for pension or compensation [that] has been allowed"; however, under 38 U.S.C. § 5108, a claim may be reopened only where "new and material evidence is presented or secured with respect to a claim *which has been disallowed*". 38 U.S.C. § 5108 (emphasis added); *see also* 38 U.S.C. §§ 7104(b); 7105(c). Therefore, it appears clear that claims that have been *allowed* are not eligible for reopening. *Ibid.* Furthermore, as to "a formal claim for compensation disallowed for the reason that the service-connected disability is not compensable in degree", the Court has held that a claim for a compensable rating for a service-connected condition is a claim for an increased rating and a new claim and is not subject to the requirements, regarding the presentation of new and material evidence, as applicable to claims to reopen. *Proscelle v. Derwinski*, 2 Vet.App. 629, 631 (1992); *see Butts v. Brown*, 5 Vet.App. 532, 535 (1993) (en banc).[2]

---

[2] The law with regard to the nature of claims for a higher rating evolved quite a while ago to the point where it is routinely considered that such a claim is a claim for an increased rating and is a new claim, and is not a claim to reopen. *See, e.g., Spurgeon v. Brown*, 10 Vet.App. 194, 196 (1997) ("appellant's claim for an increased rating . . . is 'a new claim'") (quoting *Cox v. Brown*, 6 Vet.App. 459, 460 (1994), and citing *Butts v. Brown*, 5 Vet.App. 532, 535 (1993) (en banc)); *Stanton v. Brown*, 5 Vet.App. 563, 565 (1993) ("claim for increased evaluation . . . is a new claim") (citing, inter alia, *Proscelle, infra*)); *Suttmann v. Brown*, 5 Vet.App. 127, 137 (1993) (holding that "a repeat claim for a . . . rating [of total disability based on individual unemployability], where a similar claim has been previously and finally denied, should be viewed as a new claim" and that the same "applies to claims for service connection for the [former prisoner of war (POW)] . . . diseases listed in 38 U.S.C.[] § 1112(b) and 38 C.F.R. § 3.309(c) . . . [, which provide that] any listed . . . disease becoming manifest to a degree of 10% or more in a former POW *at any time after separation from service*" will be awarded disability compensation); *Lenderman v. Principi*, 3 Vet.App. 491, 492 (1992) (characterizing *Proscelle v. Derwinski*, 2 Vet.App. 629 (1992), as holding "that a claim for an increase is a new claim, and, therefore, [is] not subject to the provisions [that] require that an appellant submit new and material evidence before a claim will be reopened"). However, the first case to make this holding not only, as stated in the text above, involved a claim for a compensable rating for a zero-rated service-connected disability, but also based its conclusion that such a claim was not a claim to reopen on the concept that "because the claimant's entitlement to benefits could be predicated on a finding that the service-connected disability had increased *since* the prior denial, . . . the claim was based upon facts different from the prior final claim." *Suttmann*, 5 Vet.App. at 136 (describing holding of *Proscelle, supra*). In *Proscelle* itself, the Court had explained that "because the veteran claims that his service-connected disability has undergone an increase in severity *since* that prior claim . . . [, t]he current claim is thus a new claim." *Proscelle*, 2 Vet.App. at 631. At this point, the proposition in the text above appears to be accepted as a truism without regard to whether a veteran actually asserts that his or her service-connected disability has increased in severity since last rated by VA, a factor neither discussed nor apparently present in *Spurgeon, Stanton*, or *Lenderman*, all *supra*. For example, in a brief filed in this Court on April 12, 2002, the Secretary asserted, without any qualification, citing *Spurgeon* and *Proscelle*, both *supra*: "A claim for an increase is a new claim." Secretary's Brief at 11, *Acton v. Principi*, U.S. Vet. App. No. 01-0564 (Notice of Appeal filed March 28, 2001). Prior to November 9, 2000, when the Veterans Claims Assistance Act of 2000, Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (VCAA), was enacted, the principal difference between an original claim and a claim to reopen pertained to the Secretary's duty to assist and the lesser applicability of that duty to a claim to reopen. That distinction is maintained in at least one major respect in the regulations issued on August 29, 2001, implementing the VCAA; in those regulations, as to claims to reopen, a VA medical examination will be provided "only if new and material evidence is presented or secured." 66 Fed. Reg. 45,620, 45,631 (Aug. 29, 2001) (amending 38 C.F.R. § 3.159(c)(4)(iii)).

Therefore, it appears that "a formal claim for compensation disallowed for the reason that the service-connected disability is not compensable in degree" may not form the predicate for a claim to reopen, either.[3]

2. What is the meaning of the term "informal claim" in the second and third sentences of the regulation; does that phrase refer to an informal claim to reopen, to an informal original claim, or to both?

3. How does the third sentence of § 3.157(b), which points out a circumstance in which the listed evidence will be accepted as "an informal claim" (apparently, as an informal claim to reopen), comport with the first sentence of the regulation? Specifically, the provision made in the third sentence for "informal claim[s] for pension previously denied for the reason [that] the disability was not permanently and totally disabling" describes a completely different situation in pension law from that described in the first sentence relating to claims for pension that have "been allowed". It appears that the third sentence describes the only circumstance in which the evidence listed in paragraphs (1), (2), and (3) will be accepted as a claim to reopen a claim for pension, but there is no explanation as to how the third sentence relates to the first sentence, which contains the sole such reference in subsection (b) to a "claim to reopen" but appears to relate only to the types of claims described in that *first* sentence.

In effect, it appears that the Secretary has failed to update this regulation (assuming that it was coherent at one point), which was prescribed initially in 1961 with substantially similar

---

[3] It appears that, at the time that the Secretary promulgated § 3.157(b) in 1961, he may have considered that claims for disability compensation were "disallowed" when service connection was found but a compensable rating was denied. That is because until 1993 the Rating Schedule did not provide for a zero-percent rating for *every* disability for which the applicable diagnostic code did not specifically include a zero-percent rating. In 1993, 38 C.F.R. § 4.31 was amended to provide, just as it does today (38 C.F.R. § 4.31 (2001)), as follows:

> In every instance where the schedule does not provide a zero percent evaluation for a diagnostic code, a zero percent evaluation shall be assigned when the requirements for a compensable evaluation are not met.

38 C.F.R. § 4.31 (1993) (amending former regulation, which first appeared in title 38 of the Code of Federal Regulations in 1965 and provided for "a no-percent evaluation . . . when the required residuals are not shown", 38 C.F.R. § 4.31 (1992)); *see Rabideau v. Derwinski*, 2 Vet.App. 141, 143 (concluding that because "the schedular criteria for hypertension do not require residuals, a zero-percent rating would not be authorized under . . . [38 C.F.R. §] 4.31").

language, 38 C.F.R. § 3.157(b) (1962), to accord with precedential judicial authority.[4]  Now would seem an opportune time for the Secretary to review this regulation.

---

[4] *See supra* note 2.