# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 12-2823

ODIS C. STOWERS, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided May 16, 2014)

*Jennifer A. Zajac*, of Oceanside, California, and *Linda E. Blauhut*, of Washington, D.C., were on the brief for the appellant.

*Will A. Gunn*, General Counsel; *Mary Ann Flynn*, Assistant General Counsel; *Michael A. Carr*, Deputy Assistant General Counsel, and *Laura A. Bernasconi*, all of Washington, D.C., were on the brief for the appellee.

Before LANCE, BARTLEY, and GREENBERG, *Judges*.

BARTLEY, *Judge*: Veteran Odis C. Stowers appeals through counsel a September 19, 2012, Board of Veterans' Appeals (Board) decision denying an effective date earlier than February 19, 2008, for the award of service connection for degenerative arthritis of the lumbar spine.[1] Record (R.) at 3-12. This appeal is timely and the Court has jurisdiction to review the Board's decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). Mr. Stowers argues that the Board, when considering his claim for an earlier effective date, erred in not addressing (1) VA's duty to attempt to obtain relevant service department records and (2) the potential applicability of 38 C.F.R. § 3.156(c). For the

---

[1] The Board remanded for additional development the issue of entitlement to an initial evaluation in excess of 20% for service-connected degenerative arthritis of the lumbar spine. Record at 11-12. Because a remand is not a final decision of the Board subject to judicial review, the Court does not have jurisdiction to consider that issue at this time. *See Howard v. Gober*, 220 F.3d 1341, 1344 (Fed. Cir. 2000); *Breeden v. Principi*, 17 Vet.App. 475, 478 (2004) (per curiam order); 38 C.F.R. § 20.1100(b) (2013).

reasons set forth below, the Court will set aside the September 2012 Board decision and remand the matter for additional development, if necessary, and readjudication consistent with this decision.

## I. FACTS

Mr. Stowers served on active duty in the U.S. Air Force from March 1979 to May 1992. R. at 342. In December 1992, he sought service connection for a "back injury" that occurred during service and had continued to the present. R. at 281. Service medical records (SMRs) initially obtained by VA—which appear to be exclusively from Langley Air Force Base in Virginia during 1991 and 1992—document left ankle and right thigh injuries but do not reference back problems. R. at 289-333. The April 1992 separation examination did not note any spine disability (R. at 285-86) but the accompanying report of medical history discloses recurrent back pain caused by lifting heavy loads (R. at 287-88).

A January 1993 VA examination noted a 1979 in-service back injury caused by lifting and that x-rays taken at that time were negative. R. at 253. The examiner also noted the veteran's complaints of "occasional muscle spasm from lifting [and] standing" and "muscle knots" in the low back. R. at 254. Mr. Stowers's spine was straight, musculature was good, and ranges of motion for lateral flexion, backward flexion, and forward extension were 30 degrees, 20 degrees, and 120 degrees, respectively.[2] R. at 258. Based on normal examination and x-rays, the examiner diagnosed intermittent back strain. R. at 261.

In March 1993, the VA regional office (RO) denied service connection for a back injury, observing that, although SMRs appeared "incomplete," the records received showed no in-service complaints or treatment for back problems and the recent VA examination found the back normal. R. at 247-49. In response, Mr. Stowers submitted a statement in support of claim requesting "reconsideration of [the] denial of [his] back condition" claim. R. at 237-46. In support of his request, he attached SMRs from Kirtland Air Force Base in New Mexico that showed a September 1979 lifting injury to the low back as well as September 1981 recurrences of back pain. *Id.* The RO

---

[2] Under VA regulations, normal ranges of motion for the thoracolumbar spine for lateral flexion, backward flexion, and forward extension are 30 degrees, 20 degrees, and 90 degrees, respectively. 38 C.F.R. § 4.71a, Plate V (2013).

issued a May 1993 confirmed rating decision stating that "[a]lthough the new evidence confirms that the veteran strained the back while in service, a review of all evidence, including the VA exam, shows that the back injury resolved, without chronic residual disability." R. at 234-36. Mr. Stowers did not file a Notice of Disagreement (NOD) as to this decision, and it became final. *See* R. at 8.

In February 2008, the veteran sought to reopen the claim for service connection for a low back disability. R. at 218. A March 13, 2008, Veterans Claims Assistance Act letter sent to the veteran indicated that his claim was previously denied because service medical records were negative for complaints of or treatment for a back condition. R. at 209. Mr. Stowers submitted an April 2008 letter from private physician Robert Hunter, who diagnosed degenerative arthritic changes of the lumbosacral spine resulting in chronic back pain and opined that this was due to in-service injuries. R. at 182; *see* R. at 179 (July 2008 letter stating the same). According to Dr. Hunter, he arrived at his opinion after reviewing "military health records" that showed the following in-service injuries: (1) a 1979 back sprain suffered while loading ammunition into helicopters in New Mexico; (2) a back injury during the period from 1983 to 1984 caused by loading missiles onto fighter jets in the Philippines; and (3) a 1986 re-injury of the back while loading missiles onto jets, this time at Langley Air Force Base. R. at 182. Dr. Hunter's diagnosis was confirmed in an October 2008 VA contract examination. R. at 157-58. The veteran also resubmitted SMRs from Kirtland Air Force Base that he had initially submitted in 1993. R. at 172-75, 186-92. In July 2008, Mr. Stowers informed VA that the "second part" of his SMRs—which "contains an extensive history of chronic back pain, spanning three countries[,] related to [his] military service"—was "kept" by the Langley Air Force Base hospital and that he was unable to make copies of them. R. at 171. However, the veteran reiterated that he had authorized VA to obtain those records and requested that it do so. *Id.*

In December 2008, based on Dr. Hunter's letter and the October 2008 VA examination, the RO found that new and material evidence had been submitted to reopen the claim, granted service connection for degenerative arthritis of the lumbar spine, and assigned a 20% evaluation effective February 19, 2008, the date VA received the veteran's request to reopen his claim for service connection. R. at 138-46. Mr. Stowers filed an NOD as to the evaluation and effective date (R. at 136), the RO continued its earlier decision (R. at 88-109), and the veteran appealed to the Board (R. at 86).

3

In the September 2012 decision on appeal, the Board denied an effective date earlier than February 19, 2008, for the award of an initial 20% evaluation for service-connected degenerative lumbar spine arthritis.  Regarding the duty to assist, the Board stated:

> [I]t is noteworthy that determinations regarding effective dates of awards are based, essentially, on what was shown by the record at various points of time and application of governing law to those findings, and generally further development of the evidence is not necessary unless it is alleged that evidence constructively of record is outstanding.  Nevertheless, the Board has carefully reviewed the [v]eteran's claims file and concludes that there has been no identification of further available evidence not already of record that would be relevant to the current claim on appeal.  Thus, VA's duty to assist has been met.

R. at 7.  The Board also determined that there had not been any service department records associated with the claims file since the May 1993 decision that would implicate 38 C.F.R. § 3.156(c).  R. at 9.  This appeal followed.

## II. ANALYSIS

Mr. Stowers argues that the Board clearly erred in finding that VA satisfied the duty to assist.  Specifically, he contends that VA failed to obtain his complete SMRs, that there is a reasonable possibility that obtaining complete SMRs could show the 1983/1984 and 1986 in-service injuries referenced by Dr. Hunter's April 2008 letter, and that associating these newly obtained SMRs with the claims file, along with Dr. Hunter's opinion, could form the basis for an earlier effective date of entitlement to benefits under § 3.156(c).  Appellant's Brief (Br.) at 3-8.  The Secretary argues that (1) VA had acknowledged in-service back injuries but denied service connection in May 1993 because no current back disability was shown; (2) in awarding service connection, VA relied on the opinions of Dr. Hunter and the October 2008 examiner diagnosing a current disability and linking it to service; and (3) because VA did not rely in whole or in part on newly associated service department records, § 3.156(c) was not implicated.  Secretary's Br. at 6-11.

Generally, the effective date for an award of service connection based on a reopened claim is the date that the request to reopen was received or the date entitlement arose, whichever is later. 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400(b)(2)(i), (r) (2013).  Thus, "the effective date of an award of service connection is not based on the date of the earliest medical evidence demonstrating a causal

4

connection, but on the date that the application upon which service connection was eventually awarded was filed with VA." *Lalonde v. West*, 12 Vet.App. 377, 382 (1999). *See generally Sears v. Principi*, 349 F.3d 1326, 1328-32 (Fed. Cir. 2003) (upholding VA's regulatory determination that, as a rule, the effective date for an award made pursuant to a request to reopen cannot predate the request).

However, there is an exception to the general rule that the effective date of an award based on a request to reopen is the date VA receives that request. If at any time after a claim is denied VA receives or associates with the claims file service department records that existed but had not been associated with the claims file at the time VA first decided the claim, VA will reconsider the claim. 38 C.F.R. § 3.156(c)(1) (2013). If VA thereafter makes an award based in whole or in part on these newly associated service department records, the assigned effective date will be "the date entitlement arose or the date VA received the previously decided claim, whichever is later." 38 C.F.R. § 3.156(c)(3); *see Mayhue v. Shinseki*, 24 Vet.App. 273, 279 (2011) ("[A] claimant whose claim is reconsidered based on newly discovered service department records may be entitled to an effective date as early as the date of the original claim."). "In this sense," the Court has said of the operation of § 3.156(c), "the original claim is not just re-opened, it is reconsidered and serves as the date of the claim and the earliest date for which benefits maybe granted." *Vigil v. Peake*, 22 Vet.App. 63, 66-67 (2008).

To explicate this regulation, the Secretary provided at the time of proposed revisions to the rule the following example:

> This provision would apply . . . in cases where a veteran files a claim for disability compensation, which VA denies because there is no evidence of an in-service injury. Years later, if VA receives service department records that show an in-service injury, and obtains a medical opinion that links that injury to the claimant's current disability, it would grant service connection. Although the doctor's opinion is not a document that meets the definition of proposed § 3.156(c)(1), the service department record showing incurrence, which provided the basis for the medical opinion, is such a document. Therefore, the veteran in this example would be entitled to reconsideration of the prior decision and retroactive evaluation of disability. Any award of benefits as a result of such reconsideration would be effective on the date entitlement arose or the date of claim, whichever is later, or any other date made applicable by law or regulation to previously decided claims.

New and Material Evidence, 70 Fed. Reg. 35,388, 35,389 (June 20, 2005).

Moreover, as part of its statutorily mandated duty to assist claimants, VA must make reasonable efforts to obtain records necessary to substantiate a claim. 38 U.S.C. § 5103A(a)(1); *see, e.g.*, *Golz v. Shinseki*, 590 F.3d 1317, 1321 (Fed. Cir. 2010). In compensation claims, this duty includes obtaining potentially relevant and identified SMRs.[3] 38 U.S.C. § 5103A(c)(1)(A) ("In the case of a claim for disability compensation, the assistance provided by the Secretary . . . shall include obtaining the following records if relevant to the claim: (1) The claimant's service medical records . . . "); 38 C.F.R. § 3.159(c)(3) (2013); *see Moore v. Shinseki*, 555 F.3d 1369, 1372 (Fed. Cir. 2009) ("An integral part of this 'duty to assist' is . . . VA's obligation to obtain *all* of a veteran's relevant service medical records before adjudicating a claim for disability compensation." (emphasis added)).

Consistent with the duty to assist, VA is obligated to develop and adjudicate a claim in a manner that ensures a veteran obtains the maximum benefits allowable in a given context. *See* 38 C.F.R. § 3.103 (2013) ("[I]t is the obligation of VA to assist a claimant in developing the facts pertinent to the claim and to render a decision which grants every benefit that can be supported in law while protecting the interests of the Government."); *see also Bradley v. Peake*, 22 Vet.App. 280, 294 (2008) ("The Secretary is required to maximize benefits . . . ."); *AB v. Brown*, 6 Vet.App. 35, 38 (1993) (remarking that "the claimant will generally be presumed to be seeking the maximum benefit allowed by law and regulation"). In *McGee v. Peake*, 511 F.3d 1352, 1356-58 (Fed. Cir. 2008), for example, the U.S. Court of Appeals for the Federal Circuit held that VA's statutory duty to assist and fully develop the record required it to obtain the appellant's service personnel records because they might show that the appellant applied for VA benefits before leaving service and, hence, were potentially relevant to his claim for an earlier effective date for the award of service connection.

Finally, in rendering its decision, the Board must consider all relevant evidence of record and address all potentially applicable provisions of law and regulation. 38 U.S.C. § 7104(a); *Schafrath*

---

[3] The Court notes that § 3.156(c)(1)

does not apply to records that VA could not have obtained when it decided the claim because the records did not exist when VA decided the claim, or because the claimant failed to provide sufficient information for VA to identify and obtain the records from the respective service department, the Joint Services Records Research Center, or from any other official source.

38 C.F.R. § 3.156(c)(2).

*v. Derwinski*, 1 Vet.App. 589, 593 (1991). It must provide a written statement of reasons or bases for its "findings and conclusions[] on all material issues of fact and law presented on the record." 38 U.S.C. § 7104(d)(1). The statement must be adequate to enable a claimant to understand the precise basis for the Board's decision and to facilitate review in this Court. *Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990). To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. *Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table).

In the present case, there is no dispute that Mr. Stowers did not appeal the May 1993 rating decision that denied service connection for a low back disability and that decision became final. *See* R. at 8. It is also undisputed that Mr. Stowers did not attempt to reopen this claim until February 19, 2008. *See* R. at 5. And § 3.156(c) is not implicated with regard to the Kirtland Air Force Base SMRs presently in the record, which Mr. Stowers submitted with Dr. Hunter's letter, because those SMRs were part of the record when the RO issued its May 1993 confirmed rating decision denying service connection. R. at 9. *Compare* R. at 172-75, 186-92, *with* R. at 239-45.

Nevertheless, Dr. Hunter's April 2008 letter diagnosing a current spine disability and opining a link with service relied on at least three sets of SMRs showing in-service back problems: (1) a 1979 SMR from Kirtland Air Force Base in New Mexico, which was previously of record (R. at 239), (2) 1983/1984 SMRs from the Philippines, which were not previously of record, and (3) 1986 SMRs from Langley Air Force Base, which were not previously of record[4] (R. at 182). Furthermore, Mr. Stowers informed VA in July 2008 that SMRs "kept" by the hospital at Langley Air Force Base would corroborate extensive back problems during service and asked VA to obtain them. R. at 171.

The Board, however, concluded that, because "there has been no identification of further available evidence not already of record that would be relevant to the current [effective date] claim on appeal," VA satisfied the duty to assist in determining the proper effective date of benefits. R. at 7. Nonetheless, the Board did not address the SMRs that Dr. Hunter relied on in forming his

---

[4] The Court notes that of the several SMRs from Langley Air Force Base in the present record, none is dated before 1991. *See* R. at 290-333.

opinion that were not previously of record, nor did the Board explain why evidence of the existence of these SMRs is not "identification of further available evidence not already of record." R. at 7. Thus, the Board failed to explain why these SMRs not previously of record would not be "relevant" to the issue on appeal, i.e., the appellant's entitlement to an earlier effective date. *Id.*; *see Golz*, 590 F.3d at 1321-22 (stating that VA's duty to assist extends to "potentially relevant" evidence, that is, "those records that relate to the injury for which the claimant is seeking benefits and have a reasonable possibility of helping to substantiate the veteran's claim"); *see also McGee*, 511 F.3d at 1358 (holding that service personnel records were relevant to the appellant's claim for an earlier effective date and, hence, that VA was obligated to try and obtain them). This is so because, as discussed above, the Secretary has explained that under § 3.156(c), SMRs newly associated with the claims file and forming the basis for a positive medical nexus opinion can establish entitlement to an effective date as early as the date of the original claim for service connection. *See* 70 Fed. Reg. at 35,389.

By failing to address this issue, the Board provided an inadequate statement of reasons or bases for its determination that VA satisfied the duty to assist. *See Caluza*, 7 Vet.App. at 506; *Gilbert*, 1 Vet.App. at 57. Therefore, the Board decision must be set aside and the matter remanded for the Board to reconsider whether VA satisfied its duty to assist. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998) (holding that remand is the appropriate remedy "where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate"). If the Board determines that these SMRs are potentially relevant to the correct effective date for benefits for service connection for degenerative arthritis of the lumbar spine, it must remand the case for VA to attempt to obtain these records. *See Shipley v. Shinseki*, 24 Vet.App. 458, 464 (2011) (remanding for the Board to make necessary factual findings pertinent to the application of § 3.156(c)).

The Secretary's contention that the SMRs are not relevant because VA has already granted service connection for the lumbar spine disability (Secretary's Br. at 9-11) is unpersuasive. First, the Secretary admits that Dr. Hunter's favorable report "was, in part, the basis for the award of service connection." *Id.* at 10-11. However, other than calling Mr. Stowers's argument "meritless," the Secretary does not address the interpretation of § 3.156(c) that VA detailed in the Federal Register.

8

*See* 70 Fed. Reg. at 35,389. Second, the Secretary does not address whether VA had a responsibility to try to "associate[ ] with the claims file relevant official service department records that existed and had not been associated with the claims file when VA first decided the claim." 38 C.F.R. § 3.156(c)(1).

VA may certainly grant service connection upon reopening without obtaining all SMRs identified by the veteran or associating them with the claims file. However, the Court holds, based on the unique and specific facts presented here, i.e., where VA grants service connection based, in part, on a medical nexus opinion that relies on SMRs that were not associated with the claims file at the time VA first decided the claim, *and have not been associated with the claims file when VA assigns an effective date for the award of benefits*, the Board is obligated to consider VA's duty to attempt to obtain such records and the potential applicability of § 3.156(c).

On remand, Mr. Stowers is free to present additional arguments and evidence to the Board in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). The Court reminds the Board that "[a] remand is meant to entail a critical examination of the justification for [the Board's] decision," *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991), and must be performed in an expeditious manner in accordance with 38 U.S.C. § 7112.

### III.  CONCLUSION

Upon consideration of the foregoing, the September 19, 2012, Board decision is SET ASIDE, and the matter is REMANDED for additional development, if necessary, and readjudication consistent with this decision.